# DOUGLAS HUTCHINGS v. MARY BOURDAGES AND OTHERS.

189 N. W. (2d) 706.

September 10, 1971—No. 42836.

*Applequist, Lyons, Nolan, Donovan, Larson & Barnes, Robert P. Nolan, Robert H. Magie III,* and *John D. Furuseth,* for appellant.

*Reavill, Neimeyer, Johnson, Fredin & Killen* and *Thomas R. Thibodeau,* for respondents Bourdages.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

This appeal from a judgment presents the issue of an automobile owner's liability under the applicable owner consent statute,

Minn. St. 1965, § 170.54,[1] for damage caused by the negligence of a subpermittee.

Plaintiff, Douglas Hutchings, brought this negligence action against defendants, Mary and Victor Bourdages and Norman Calder, for injuries sustained in an automobile accident on September 12, 1965. The Bourdageses were not involved in the accident except as owners of the automobile driven by Calder, and their liability depends upon our construction of the owner consent statute.

In May 1965 the Bourdageses, both residents of the Province of Ontario, Canada, delivered their automobile into the unrestricted possession and control of Mary Bourdages' nephew, Orlo Mallory, at his place of employment at Fort Frances, Ontario. They did so because both were employed at a camp which was inaccessible by automobile and because neither of them was licensed to drive an automobile. The Bourdageses, as the trial court found, impliedly consented to the use of their automobile by any person authorized by Orlo Mallory to use it, including Mallory's son, Robert.

On September 11, 1965, Orlo Mallory permitted Robert to use the Bourdages automobile for his personal pleasure, subject to two restrictions: That he not drive the automobile across the border into Minnesota and that he not permit anyone else to drive the automobile. Robert, however, did not follow these restrictions. He drove the automobile across the border to Ranier, Minnesota, in the company of several other young people from Fort Frances, Ontario, and, about 11:30 p. m. in a tavern at Ranier, he consented to the use of the automobile by Edwin Bruyere, Jr. to take defendant Norman Calder to get some money

---

[1] Minn. St. 1965, § 170.54, provides as follows: "Whenever any motor vehicle * * * shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

owed the latter by his employer. Calder drove, proceeding with Bruyere to the home of Calder's employer about 5 miles east of Ranier and thereafter to International Falls, several miles west of Ranier, in unsuccessful attempts to find the employer. The accident occurred as Calder and Bruyere were returning from International Falls.

The trial court found that Calder's use of the automobile was within the scope of the permission given by Robert Mallory to Bruyere but was not within the scope of permission given by Orlo Mallory to Robert Mallory. It concluded that the Bourdageses had not consented to Calder's driving their automobile, within the meaning of the owner consent statute. It accordingly rendered judgment that defendants Bourdages were not vicariously liable for Calder's alleged negligence.[2]

We reverse and remand with directions to enter judgment for plaintiff on the issue of whether Calder was operating the automobile with the Bourdageses' consent.

The enactment of the owner consent statute, as part of the Safety Responsibility Act, was impelled by strong considerations of public necessity. An owner of an automobile otherwise could not be held liable for injuries to innocent third persons resulting from the negligence of a bailee unless a relationship of principal-agent or master-servant existed between the owner-bailor and the operator-bailee.[3] As we said in Holmes v. Lilygren

---

[2] Defendants Bourdages had moved to sever the consent issue from the issues of negligence and damages, and the district court, acting pursuant to Rule 42.02, Rules of Civil Procedure, had ordered severance. The issue of consent was thereafter tried to the court without a jury. The issue of negligence and damages is not now in issue.

[3] Cornish v. Kreuer, 179 Minn. 60, 228 N. W. 445; Morss v. Murphy Transfer & Storage Co. 170 Minn. 1, 211 N. W. 950. The family purpose or family car doctrine provided an exception to this rule. Johnson v. Smith, 143 Minn. 350, 173 N. W. 675. Other jurisdictions made an exception in the case of an owner who negligently entrusted his automobile to a person whom he knew or ought to have known was incompetent or reckless. Note, 21 Minn. L. Rev. 823, 824.

Motor Co. Inc. 201 Minn. 44, 48, 275 N. W. 416, 418, and reiterated in Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 409, 10 N. W. (2d) 406, 415, 147 A. L. R. 945, 956: "It is clear that the purpose [of the statute which was an earlier version of § 170.54] was to make the owner of motor vehicles liable to those injured by their operation upon public streets or highways where no such liability would otherwise exist." The salutary effect was "to give to persons injured by the negligent operation of automobiles an approximate certainty of an effective recovery by making the registered owner, who is [encouraged by the act] to take out insurance to cover his liability * * *, responsible as well as the possibly or probably irresponsible person whom the owner permits to drive the car * * *." Restatement, Torts, § 485, comment *b*, quoted approvingly in Jacobsen v. Dailey, 228 Minn. 201, 207, 36 N. W. (2d) 711, 714.

Public policy similarly dictates that the statute be accorded a construction that will achieve this vital statutory objective. We have to that end given the statute a liberal construction, particularly in situations involving minor permittees and subpermittees. Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862; Lange v. Potter, 270 Minn. 173, 132 N. W. (2d) 734; Granley v. Crandall, 288 Minn. 310, 180 N. W. (2d) 190.

In Foster, we held a mother liable for the negligent unauthorized operation of her automobile by a friend of her 14-year-old son where the mother had given possession and control of the automobile for a designated purpose but without restriction as to whether her son could allow anyone else to drive it. We quoted with approval language used by the Michigan Supreme Court in interpreting a similar statute in Kerns v. Lewis, 246 Mich. 423, 425, 224 N. W. 647, 648:

"* * * Does the essential consent mentioned in the statute relate to the *driver,* or the vehicle 'being driven'? The statute makes the owner liable if the 'motor vehicle is being driven with his or her express or implied consent or knowledge,' and we cannot read into it the restriction that the particular driver must

be known by and his driving consented to by the owner. The statute may be drastic, but we cannot render it less so by any permissible construction." 229 Minn. 435, 39 N. W. (2d) 866.

In Lange, we held a father liable for the negligent operation of his automobile by his daughter's boy friend, even though the father had expressly admonished his daughter not to permit anyone else to drive it. We based our holding upon the premise that at the time of the accident the driver, with the permittee-daughter as his passenger, was using the automobile for a purpose intended by both the owner and his daughter, specifically, to celebrate her birthday. We expressed the view that perjury and collusion would be encouraged were an owner to be permitted to evade liability on the basis of asserted secret restrictions on the bailee's authorized use.

Granley went a step further. There the owner had given her teen-age daughter standing instructions not to let anyone else drive her automobile. On the day of the accident she permitted her daughter to drive to a friend's house on an errand but instructed her to return right after performing that one errand. Instead of returning directly home, the daughter picked up some of her teen-age friends, including defendant Crandall, and drove to the outskirts of Duluth. Crandall took over the wheel and, while driving at high speed, struck two boys on a bicycle. Holding that the owner was liable under Minn. St. 170.54, we emphasized that parents cannot blind themselves to the realities of youthful behavior, the universal proclivity of young people for joyriding, and the inclination of young people to permit friends to drive their automobiles. We stated (288 Minn. 313, 180 N. W. [2d] 192):

"* * * To sustain the burden of proving lack of consent will require a strong showing that the car was being used by the child without the parent's knowledge and contrary to his explicit instructions, or that the operator, other than the child, was driving without the child's permission under conditions which approach the status of a conversion or a theft."

The case at bar is factually distinguishable from Granley in only one significant respect: There, the child-permittee who consented to the operation of her parents' automobile by a subpermittee remained in the automobile as a passenger; here, the child-permittee was not a passenger at the time of the accident.[4] We are not persuaded that this factual difference should dictate a different result.

We now hold, extending the doctrine of Granley one step forward, that the presence of a minor-permittee as a passenger in an automobile being driven by a minor-subpermittee is not a necessary condition to liability of the automobile's owner under § 170.54. Any assumption that the permittee, by his presence as a passenger, will effectively exercise a right to control the subpermittee's driving of the automobile is unrealistic. As we observed in Weber v. Stokely-Van Camp, Inc. 274 Minn. 482, 490, 144 N. W. (2d) 540, 544, such right of control is usually "theoretic" for its actual exercise may well be an exercise in futility, if not in fact dangerous.[5] It is a particularly unrealistic assumption as to youngsters out on a lark. The imposition of such a condition upon the vicarious liability of the owner would not serve the purposes of the owner consent statute.[6]

Reversed and remanded.

---

[4] We do not overlook the fact that Orlo Mallory was interposed between the actual owners of the automobile, the Bourdageses, and the permittee, Robert Mallory. This is only a superficial difference, however, for the Bourdageses, having granted to Orlo Mallory the complete control of their automobile, must be deemed to stand in his shoes.

[5] Both the issue and the factual situation in Weber were different from those in the instant case, but the validity of the observation surely is not limited to the Weber situation only.

[6] This result, as to an insurer, is not novel since the word "permission" in an omnibus insuring clause has been accorded the same meaning as the word "consent" in Minn. St. 170.54. Taylor v. Allstate Ins. Co. 286 Minn. 449, 176 N. W. (2d) 266. The insured owner in Taylor had permitted another person to use his automobile and the permittee had turned the automobile over to a subpermittee, his son. We there held that the subpermittee used the automobile with the permission of the

owner within the meaning of the omnibus clause notwithstanding the fact that the permittee was not present in the automobile at the time it became involved in an accident.