CAROL L. SHUCK v. DAVID LYNN MEANS
AND OTHERS.
UNITED SERVICES AUTOMOBILE ASSOCIATION
v. SAME.
ROYAL INDEMNITY COMPANY,
THIRD-PARTY DEFENDANT.
HERTZ RENT-A-CAR AND ANOTHER, APPELLANTS.

226 N. W. 2d 285.

November 8, 1974—No. 44508.

*Castor, Ditzler & Klukas* and *John E. Castor,* for appellants.
*Samuel H. Bellman* and *Richard Bellman,* for respondent Shuck.

KELLY, JUSTICE.

One of these actions was brought by Carol L. Shuck to recover for personal injuries sustained in an automobile accident involving a vehicle owned by defendant Hertz Rent-A-Car and driven by defendant David Means, age 18. A second action was brought by United Services Automobile Association for declaratory judgment that an insurance policy it had issued to Means' father did not provide coverage for David Means, who in turn filed a third-party complaint for a declaratory judgment that, if no coverage existed under the United Services policy, a policy issued to Hertz by third-party defendant Royal Indemnity Company afforded Means coverage and required Royal to defend him in the Shuck action.

The parties to these suits stipulated to plaintiff Shuck's damages, to the negligence of Means, and also to the liability of Hertz conditioned on a finding that Means' use of the vehicle was with Hertz' permission and consent. The issues were then submitted to the court upon the record without oral testimony other than depositions, resulting in findings that the United Services policy did not afford coverage and that Means' use of the Hertz vehicle

at the time of the accident was with the permission and consent of Hertz. Hertz and Royal Indemnity appeal from the denial of their motion for a new trial and from the judgments. We affirm.

On March 27, 1967, an automobile owned by Hertz, leased to one George A. Codling, and driven by Means, collided with an automobile in which plaintiff Shuck was a passenger. Means was uninsured at the time of the accident and the parties later stipulated that he had been negligent. The rental agreement signed by Codling was a standard form which provided that persons under 21 years of age were not allowed to operate the vehicle. The Hertz employee who had rented the car to Codling was deposed on the subject of Hertz' policy regarding minors, but she had no recollection of that particular rental transaction. In its answer to plaintiff's complaint, Hertz denied that its vehicle was being used with permission, and alleged that its possession by Means was obtained by fraud through a conspiracy between Means and Codling. And in a cross-claim against Means, Hertz alleged that Means, who could not himself obtain a vehicle from Hertz because of his age, conspired with Codling to have the latter obtain the vehicle ostensibly for his own use but in fact for the use of Means. Despite these allegations, the record is completely devoid of anything which could directly support a finding of fraud, leaving for our consideration only the following issue: Whether a car rental agency is liable under the Minnesota Safety Responsibility Act when one of its cars is leased by one person, but operated by another in violation of the rental agreement.

The applicable owner-consent statute, Minn. St. 1965, § 170.54, provides as follows:

"Whenever any motor vehicle * * * shall be operated upon any public street or highway of this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

This provision, enacted as part of the Safety Responsibility Act, was intended to make the owners of motor vehicles liable to those injured by their operation where no such liability would otherwise exist, giving such injured persons more certainty of recovery by encouraging owners to obtain appropriate liability insurance. And to that end, the statute is to be given a liberal construction. Hutchings v. Bourdages, 291 Minn. 211, 189 N. W. 2d 706 (1971).

This court, in Foster v. Bock, 229 Minn. 428, 39 N. W. 2d 862 (1949), was asked to decide whether a vehicle owner was liable under the owner-consent statute where a subpermittee was driving at the time of the accident, the permittee remaining in the vehicle only as a passenger. In imposing liability on the owner, the court quoted with approval the following language used in Kerns v. Lewis, 246 Mich. 423, 425, 224 N. W. 647, 648 (1929) by the Supreme Court of Michigan in construing a similar statute:

"* * * Does the essential consent mentioned in the statute relate to the *driver*, or to the vehicle 'being driven'? The statute makes the owner liable if the 'motor vehicle is being driven with his or her express or implied consent or knowledge,' and we cannot read into it the restriction that the particular driver must be known by and his driving consented to by the owner." 229 Minn. 435, 39 N. W. 2d 866.

In Granley v. Crandall, 288 Minn. 310, 180 N. W. 2d 190 (1970), the restriction referred to in the above quotation was sought to be expressly imposed by the owner. The court held that notwithstanding a parent's explicit instructions to her child forbidding the operation of her automobile by anyone else, the parent is deemed to have given her consent under Minn. St. 170.54 when the car is driven by a third person with the child's permission and under its direction if the child is actually a passenger in the car.

The court went a step further in Hutchings v. Bourdages, *supra,* holding that the presence of the permittee as a passenger

in an automobile being driven by a subpermittee is not a necessary condition to liability of the owner under § 170.54.

Proving lack of consent in these situations requires a strong showing that the car was being used by the permittee without the owner's knowledge and contrary to his explicit instructions, or that the subpermittee was driving without the permission of the first permittee under conditions which approach the status of conversion or a theft. Granley v. Crandall, *supra*. Neither of these situations is shown by the facts of the instant case, and the trial court's finding that implied consent existed is justified under the aforementioned cases unless the holdings of those cases are confined to situations involving permittees who are minor children of the owners. Such a narrow application of those cases would be inappropriate in light of the purpose of the owner-consent statute and the commercial nature of the transaction here involved.

This was the position taken by the Florida Supreme Court in Susco Car Rental System of Florida v. Leonard, 112 So. 2d 832 (1959). In that case, a car rental agency rented a car to the bailee, or permittee, under a written contract which expressly prohibited allowing anyone else to drive the car. The car was involved in an accident with plaintiff's vehicle while being driven by a third party, not accompanied by the bailee, and the plaintiff brought an action against the rental agency under Florida's "dangerous instrumentality" doctrine.[1] The Florida Supreme Court affirmed a District Court of Appeal which reversed a summary judgment for defendant-owner. In affirming, the court quoted with approval the following statement from the district court's opinion:

---

[1] This doctrine, similar to our owner-consent statute, has been defined to be: "When an owner authorizes and permits his automobile to be used by another he is liable in damages for injuries to third persons caused by the negligent operation so authorized by the owner." (Italics omitted.) Lynch v. Walker, 159 Fla. 188, 194, 31 So. 2d 268, 271 (1947).

"When this defendant turns over an automobile to another for a price, he in actuality intrusts that automobile to the renter for all ordinary purposes for which an automobile is rented. The fact that the owner had a private contract or secret agreement with the renter cannot make such restrictions a bar to the rights of the public. The restrictions agreed upon do not change the fact that the automobile was being used with the owner's consent." 112 So. 2d 835.

Accordingly, the trial court was correct in concluding that Means was operating the vehicle with the implied consent of Hertz.

Affirmed.