DUANE FISCHER v. MARKET FORD SALES, INC.

225 N. W. 2d 370.

December 13, 1974—No. 44449.

Ronald R. Frauenshuh, for appellant.

Faegre & Benson, Wright W. Brooks, and Martin N. Burke, for respondent.

Heard before Sheran, C. J., and Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Plaintiff sought to recover under Minn. St. 170.54 for personal injuries sustained by him as a result of a collision with an automobile owned by defendant sales company. At the time of the collision, defendant's car was operated by an unlicensed driver who had unlawfully converted it after being entrusted with its use for the purpose of a test drive. Plaintiff appeals from a summary judgment for defendant. We reverse.

On June 22, 1970, one Roger Allen Stark, a 40-year-old parolee from the Minnesota State Prison, approached one of defendant's salesmen about buying a used car from defendant's lot on Broadway Avenue in the city of Minneapolis.

Stark looked at a tan 1963 Ford and inspected various features of the car. The salesman then asked Stark if he would like to test-drive it and, when Stark said he would, allowed him to drive the car from the lot for demonstration purposes. No attempt was made by the salesman to verify Stark's identity or to ascertain whether or not Stark had a valid driver's license. Stark did not return this automobile but, rather, continued to drive it as his own until August 30, 1970, at which time he was taken into

custody for violation of his parole. The record does not show that defendant reported this automobile theft before July 14, 1970, the date of the collision between Stark and the plaintiff. This accident occurred some 22 days after the day of the theft.

It was later revealed that Stark had five prior felony convictions, three of which were for car thefts; that he had never possessed a valid driver's license; and that he had been released from the county jail on the morning of June 22, 1970, the same day that he took the car from defendant's lot, after having been held for a week following his theft of another car.

The issue raised on this appeal is as follows: Where an automobile dealer, in the course of his general business, consents to allow a person to test-drive an automobile, is the dealer responsible under Minn. St. 170.54 when the person entrusted with the vehicle converts it to his own use, contrary to the terms of the entrustment, and 22 days later is involved in an accident resulting in injuries to another? We hold that the dealer can be held liable.

Several theories of liability have been advanced by plaintiff on this appeal: One theory is that defendant is liable under Minn. St. 170.54.[1] Plaintiff also advances the theory that defendant negligently entrusted the vehicle to Stark and therefore should not be allowed to shield itself from liability where it did not inquire of Stark whether the latter possessed a valid driver's license and this omission set in motion a chain of events that were completely predictable, resulting ultimately in plaintiff's injuries. The third possibility is Minn. St. 171.23.[2]

---

[1] Minn. St. 170.54 provides: "Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

[2] Minn. St. 171.23 states: "No person shall rent or lease a motor vehicle to any other person unless the latter person is then duly licensed hereunder, or, in the case of a non-resident, then duly licensed under

We hold that the trial court erred in granting summary judgment for defendant.

1. The contention that defendant is liable under Minn. St. 170.54 [3] compels us to reexamine our decision in Roehrich v. Holt Motor Co. 201 Minn. 586, 277 N. W. 274 (1938). In that case this court held that one who by fraud obtained permission to take an automobile for a test drive and was involved in an accident while driving that automobile beyond the scope of the owner's consent cannot be deemed the agent of the owner. The fraud was held to vitiate the owner's consent because there was no meeting of the minds.

Initially we note that there are several factual differences between Roehrich and the case at bar. In the former, the automobile was returned to the dealer's lot on the day it was taken, as opposed to the instant case where the car was never returned by Stark. Secondly, in Roehrich the dealer contacted the police as soon as the agreed time duration of the test drive had lapsed, whereas in the case at bar there is no evidence that defendant *ever* reported the apparent theft to the authorities prior to the accident in which plaintiff was injured. Finally, in Roehrich there was no showing that the person to whom the automobile was lent did or did not possess a valid driver's license, while in the case at bar the record clearly shows that Stark did not hold a valid driver's license.

We cannot avoid the fact that since the time of the Roehrich decision, which was almost 37 years ago, there has been a vast increase in the number of automobiles and dealers in this state. The Roehrich view that fraud vitiates consent should not be applicable to the particular situation presented in the case now before this court. The Roehrich concept of consent turned on the intent of the *purchaser*, whereas today we hold that under Minn.

the law of the state or country of his residence, except a non-resident whose home state or country does not require that a driver be licensed."

[3] Quoted in footnote 1, *supra*.

St. 170.54 it is the intent of the *owner* of the vehicle that controls. Where an automobile dealer voluntarily allows a prospective buyer to drive an automobile, then the dealer will not be allowed to shield himself from liability on grounds that he was the victim of fraud. To the extent that this holding conflicts with Roehrich, that decision is overruled.[4]

The theory of liability in this case is not inconsistent with previous rulings of this court. In the case of consent given family members, the court has greatly extended the application of the statute. We have held that, where a teenage child driving the family car with parental consent violates the terms of the consent by allowing another youngster to drive, the parent's consent is deemed to include the other youngster. Granley v. Crandall, 288 Minn. 310, 180 N. W. 2d 190 (1970). Even where the minor child of one who borrows a car—a subpermittee—exceeds the scope of parental consent, the owner, who originally loaned the car, has been deemed to consent to its operation. Hutchings v. Bourdages, 291 Minn. 211, 189 N. W. 2d 706 (1971).

2-3. There remains the question of when consent is withdrawn. A dealer should not be able to avoid responsibility merely by showing that the use of the car exceeded the consent given. The dealer must show that reasonable steps were taken to recover the car, such as notifying the police. In any event, the question of when, if at all, consent was withdrawn is a jury question.

The trial court is not precluded from taking testimony to decide whether reasonable men could differ as to whether or not defendant made a reasonable effort to recover the stolen vehicle,

---

[4] This situation is entirely different from a case where there is a forcible automobile theft. In such a case the owner has no control over who drives his vehicle, whereas, in the case at bar, the owner did have this control.

We further note that we offer no opinion on the question of consent where the owner makes efforts to ascertain the identity of the person to whom the automobile is lent and his competency to drive. Each case must turn on its particular facts.

thereby withdrawing consent and justifying the trial court in granting summary judgment.

Reversed and remanded for a new trial.